McCALEB, Justice.
Jessie Perkins, a negro, was indicted, tried and convicted for the crime of aggravated rape upon a white woman and was sentenced to death by electrocution. He has appealed.
The record reveals that, during the course of the proceeding .below, Perkins reserved two bills of exception. One of these bills, which was taken to the refusal of the judge to grant a new trial on the allegation that the verdict of the jury was contrary to the law and the evidence, has been abandoned inasmuch as it presents nothing for review. The other bill was taken to the action of the trial judge in denying a motion to quash the indictment, the general venire and the grand and petit jury panels on the ground that members of the negro race had been arbitrarily and systematically excluded from jury service solely because of their race and color. This claim of discrimination is founded upon an alleged violation of Article 172 of the Code of Criminal Procedure, Article I, Section 2 of the Louisiana Constitution and the Equal Protection Clause contained in the Fourteenth Amendment to the Constitution of the United States.
A legion of cases involving alleged racial discrimination in selection of grand and petit juries are to be found' in the jurisprudence of the Supreme Court of the United States and this court. These adjudications have settled all legal problems here presented and they have been many times cited and discussed by us in kindred matters. State v. Gill, 186 La., 339, 172 So. 412; State v. White, 193 La. 775, 192 So. 345; State v. Dorsey, 207 La. 928, 22 So.2d 273. Hence a comprehensive review of the authorities would be superfluous. Suffice it to say that the Supreme Court of the United States has declared, in .substance, that equal protection of the law requires that a colored person shall be afforded an opportunity to have members of his race serve upon the grand and petit jury in cases involving his life or liberty and, therefore, any denial of this guarantee, either by a law which does not provide a fair mode of selection or by officers who systematically administer a valid law so as to accomplish gross inequalities, cannot be countenanced. See Hill v. State of Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559 and our comparatively recent decision in State v. Anderson, 205 La. 710, 18 So.2d 33, where a lengthy review of much of the jurisprudence is set forth. In every case, the basic question for determination is whether there has been a discrimination, either by statute or by practice of the officers charged with administration of the law. And, as said by the Supreme Court *1000 of the United States in Smith v. State of Texas, 311 U.S. 128, 61 S.Ct. 164, 166, 85 L.Ed. 84: “If there has been discrimination, whether accomplished ingeniously or ingenuously, the conviction cannot stand.”
In the matter at hand, counsel for appellant concede that our statutes, relative to the qualification of persons for jury service and the procedure for the selection of juries, are fair and that no racial discrimination will occur if they are administered properly.[1] But counsel contend that the Jury Commission for the Parish of East Baton Rouge has not administered the laWs fairly and impartially.
 The pertinent allegations of the motion to quash the indictment are that the general jury venire was illegally drawn for the reason that the Jury Commission deliberately and systematically excluded the names of negroes therefrom solely because of their race; that the jury Commissioners have indulged in this practice over a period of years, it being their policy and custom to select one negro from each drawing of petit jurors as a sham to make it appear that they complied with constitutional and lawful mandates; that said Commission devised a system of employing two jury boxes, one containing the names of white persons qualified for jury duty and the other containing the names of a few negroes and that, when the petit juries were drawn, 29 names would be taken out of the jury box containing the names of white persons and the name of one negro drawn out of the box containing the names of negroes.
The foregoing charges are of a most serious nature and, if true, would exhibit unconscionable acts practiced by the Jury Commissioners emanating solely from racial prejudice. However, an examination of the record reveals that appellant did not offer a word of proof to sustain the specific allegations of wrongdoing on the part of the Jury Commissioners set forth in the motion to quash. His counsel acknowledge that he had the burden of proving the charges of discrimination as it is well settled that, in the absence of evidence to the contrary, it will be presumed that the list selected by the Jury Commission has been compiled fairly and not with any view of discrimination on account of race or color. See State v. Gill, supra and State v. Pierre, 198 La. 619, 3 So.2d 895.
Since appellant utterly failed to offer any proof of the specific allegations of fact contained in the motion to quash, we examine the evidence tendered by him to sustain his general charge chat negroes have actually been excluded from jury service in the Parish of East Baton Rouge on account of their race and color. In support of this contention, appellant placed three members of the jury commission, viz., Mr. J. M. Cadwallader, Mr. St. *1002 George Hines and Mr. J. D. Reynolds on the stand as witnesses in his behalf.
Mr. Cadwallader stated that he has been a member of the Jury Commission for approximately two years; that, during his tenure, the general venire list has been made up of persons selected from the Parish registration list of voters; that he was sure that the names of negroes were placed on each general venire list but that he, personally, could not recall that he had ever submitted the name of a colored man. He denied that there was any discrimination in the selection of negroes for jury service maintaining that each list contained the names of negroes.
The testimony of Mr. Hines is that he has been a Jury Commissioner for about two years; that, during that period, he has personally submitted the names of negroes for jury service but is unable to state the number submitted by him; that there has been no discrimination whatever by the Jury Commissioners and that it has been the policy of the Commission to select negroes as well as whites for both grand jury and petit jury service. To the same effect is the testimony of Mr. J. D. Reynolds.
While it is difficult to see that the statements of the above named Jury Commissioners can be regarded as- proof supporting appellant’s general charge of exclusion of negroes from jury service, the evidence tendered by the State makes it apparent that the allegations of discrimination was mere fancies of the pleader not founded on the slightest sort of accurate information. Mr. S. Y. Watson, Clerk of Court and Ex Officio member of the Jury Commission of East Baton Rouge Parish for 15 years, testified that it has been the policy of the Commission to select all juries- from the registration rolls; that those rolls show that there are approximately 500 negroes and 34,000 white persons registered; that, on the instruction of the judges of the Nineteenth Judicial District Court that a representative number of negroes must be kept in the tales box and also on the grand jury list, the Jury Commission has for the past 10 years made certain that negroes were to he considered for jury service and included on all venire lists and that, since 1936, an average of 20 to 25 names of colored persons- have been placed on each general venire list of 300. In support of Mr. Watson’s testimony, a letter written to him by Hon. Charles A. Holcombe, Senior Judge of the Nineteenth Judicial District Court, was offered in evidence. This letter, dated June 29, 1944, exhibits that the judge, taking cognizance of a recent decision of this Court (State v. Anderson, supra, decided on April 17, 1944), deemed it advisable that some inquiry be made by the Jury Commission respecting the white and negro population of the Parish as well as the proportion of literacy and illiteracy among both races. He therefore suggested to Mr. Watson that the Bureau of Census at Washington, *1004 D: C., be contacted' so that data concerning the proportion or percentages of whites' and negroes qualified for jury service could be ascertained. Mr. Watson testifies that, in conformity with the letter of Judge Holcombe, he communicated with the Bureau of Census in Washington but that he has never received a reply to the letter written by him. This letter, which was offered in evidence, is dated July 25, 1944.
The evidence of Mr. Watson is corroborated, in large measure, by the testimony of Mr. Jodie R. Smith, the Registrar of Voters, who recalled the names of several negroes who had served at various times on both grand and petit juries. Indeed, the record shows that one of the members of the grand jury which returned the indictment against the appellant was a negro and that Paul A. Le Blanc, a negro, was on the petit jury panel for the week during which the appellant was tried.
In the face of the foregoing proof, counsel for appellant argue that the evidence offered on behalf of their client is of such probative value as to overcome the presumption that the Jury Commissioners performed their duties in a non-discriminatory fashion. We'see little merit in this proposition as it clearly appears that the evidence adduced, far from exhibiting that the Jury Commission has systematically-excluded negroes from jury service, warrants the resolution that negroes have been placed on the jury lists in just proportion to whites appearing on the registration roll for petit and grand jury service for the past 10 years and that they have actually served on such juries.
Albeit, we experience difficulty in ascertaining the factual basis upon which the argument of counsel for appellant is predicated. They seem to eke out of the testimony of the Jury Commissioners, (to quote from their brief) “a subtle policy of discrimination and exclusion of Negroes from jury services because of race and color”. This contention is not founded upon fact but rather expresses a suspicion existing in the minds of counsel — based either upon the premise that the testimony is false[2] or upon the notion that, since appellant is a negro, racial discrimination follows as a matter of course.
It is stated in the appellant’s brief (although counsel conceded in oral argu *1006 ment that they are not pressing this contention) that the method of the Jury Commission in selecting the general venire list from the registration roll manifests •discrimination inasmuch as there are only 540 negro voters as compared _ to 34,000 whites, whereas, the 1930 census reveals that negroes constitute 43.1% of the local population of the Parish and only 20.7%[3] ■of the illiterate population. Article 172 of 'the Code of Criminal Procedure does not require that a person be a registered voter in order to qualify for jury service. How•ever, since the qualifications set forth in Article 172 with respect to age, residence, literacy and other requirements for jury service are substantially the same as those of an elector, the Jury Commission has found is convenient to obtain its general venire list from the registration roll. This has been a long established custom and we •do not find anything objectionable in the practice. Literate negroes are given the same right as white men to register as voters. The practice of selecting jury lists from the registration rolls has the effect of giving preferences to those persons desirous of having a voice in government and willing to assume the responsibilities of citizenship. A laudable preference in our opinion.
Counsel cites the 1930 census as a basis, for the determination of percentages of white and negroes, literate and illiterate, residing in East Baton Rouge Parish. It is obvious that the 1940 census would be more appropriate to the case. That census shows that there are 88,415 persons residing in East Baton Rouge Parish of which 54,774, or 62%, are white and 33,634, or 38%, are colored. It does not set forth the number or percentages of illiterates among the whites and negroes and appellant has not submitted any data on this score. Consequently, we find it impossible to say that the literate negro population of East Baton Rouge Parish eligible for jury service is so far out of proportion to the negro electors appearing on the registration roll that discrimination results from using the registration roll as a basis for selection for jury service as a matter of course. The evidence certainly does not authorize such a conclusion. Conversely, it reveals that the Jury Commission has faithfully and impartially performed its duty.
Finally, counsel for appellant maintain that the Jury Commission, in its use of the registration roll as a basis for compilation of the general venire lists, has actually practiced discrimination because *1008 the original lists of March 12th and September 5th 1946 contained the names of only two negroes — whereas, a comparison of the number of registered negroes (540) with the whites (34,000) shows that appellant was entitled to have at least four negroes on each list.
We find no substance in this proposition. In the first place, the evidence shows- that the general venire lists complained of were supplemented so that there were five negroes thereon. Moreover, we do not understand that a person charged with crime is entitled to have an exact percentage of persons of his race, in comparison to other races, placed on the general venire. The Constitution forbids discrimination; it does not deal with percentages. Percentages may be of value in cases where no representation exists or where token representation has been given in keeping with a scheme to deny the equal protection of the laws. But, here, substantial representation has been shown and no plan to avoid the letter or spirit of the equal protection clause has been proven. Compare Hill v. State of Texas and Smith v. State of Texas, supra.
The conviction and sentence are affirmed.

 Article 172 of the Code of Criminal Procedure specifically forbids discrimination founded upon race, color or previous condition of servitude.

 In this connection it is to be observed that counsel attack the statement of Mr. Watson to the effect that 20 to 25 colored men have been placed on each general venire list since 1936. Mr. Smith, the Registrar of Voters, stated that Mr. Watson was in error, insofar as the general venire lists of March 12th and September 5th 3946 were concerned, as a check of the registration roll revealed that only two colored men were placed on each of those lists. Mr. Watson later admitted his error when he was recalled to the stand but he did not retract his statement that an average of 20 to 25 negroes have been placed on each of the jury lists during the 30 year period.

 Obviously an error, as a study of the 1930-census reveals that of the 5,429 illiterates in this Parish, 4,889, or approximately 90%, are negroes. Further, 20.-7% of the negro population are illiterate, while only 1% of the native and foreign-born whites are illiterate.